**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT
LITIGATION**

| | |
|---|---|
| **In re: CP4 Fuel Pump Marketing, Sales Practices, and Products Liability Litigation** | **MDL No. 2919** |

**DEFENDANT FORD MOTOR COMPANY'S BRIEF IN OPPOSITION TO THE CP4 PLAINTIFFS MOTION FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ...................................................................................................... 3

I.    Plaintiffs' Motion should be denied because Ford's pending motions to transfer under Section 1404 are preferable to consolidation for pretrial purposes only ................ 3

II.    If this Panel establishes an MDL it should select the Eastern District of Michigan as the forum and include only the Ford cases in that MDL ............................................. 4

    A.    The Eastern District of Michigan is more convenient for the parties and witnesses ................................................................................................ 4

    B.    Selecting the Eastern District of Michigan as the forum would avoid personal jurisdiction issues that would plague most other forum courts .............. 8

        1.    Ford is headquartered and subject to general jurisdiction in the Eastern District of Michigan ..................................................... 8

        2.    An MDL Court's jurisdiction over even pretrial activities is no longer beyond scrutiny .......................................................... 9

III.    Any Ford MDL should not include General Motors or Chrysler ................................... 11

CONCLUSION .................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
  201 F. Supp. 3d 1375 (J.P.M.L. 2016)........................................................................15

*In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*,
  804 F. Supp. 2d 1376 (J.P.M.L. 2011)........................................................................3

*Cahen v. Toyota Motor Corp.*,
  147 F. Supp. 3d 955 (N.D. Cal. 2015) ........................................................................8

*In re Capacitors Antitrust Litig. (No. II)*,
  223 F. Supp. 3d 1340 (J.P.M.L. 2016)........................................................................4

*In re: Checking Account Overdraft Litig.*,
  626 F. Supp. 2d 1333 (J.P.M.L. 2009)........................................................................15

*comScore, Inc. v. Integral Ad Sci., Inc.*,
  924 F. Supp. 2d 677 (E.D. Va. 2013) ........................................................................5

*In re Corvette Z06 Mktg. & Sales Practices Litig.*,
  289 F. Supp. 3d 1348 (J.P.M.L. 2018)........................................................................4, 5

*In re: Darvocet, Darvon & Propoxyphene Prod Liab. Litig.*,
  780 F. Supp. 2d 1379 (J.P.M.L. 2011)........................................................................15

*Droesser v. Ford Motor Co.*,
  Case No. 19-cv-12365 (E.D. Mich.) ........................................................................1, 4, 6

*Farlow v. Ford Motor Co.*,
  Case No. 3:18-cv-06967 (N.D. Cal.) ........................................................................1, 4

*In re FMC Corp. Patent Litig.*,
  422 F. Supp. 1163 (J.P.M.L. 1976)........................................................................10

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Practices
  Litig.*,
  No. MDL 2901, 2019 WL 4010760 (J.P.M.L. Aug. 1, 2019) ..................................5

*Garlough v. Trader Joe's Co.*,
  No. 15-CV-01278-TEH, 2015 WL 4638340 (N.D. Cal. Aug. 4, 2015) ...................5

*In re Genetically Modified Rice Litig.*,
  764 F.3d 864 (8th Cir. 2014) ........................................................................9

*In re Gerber Probiotics Prods. Mktg. and Sales Practices Litig.*,
   899 F. Supp. 2d 1378 (J.P.M.L. 2012).......................................................................3

*In re: Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practices Litig.*,
   844 F. Supp. 2d 1380 (J.P.M.L. 2012).......................................................................7

*In re Hudson's Bay Co. Customer Data Sec. Breach Litig.*,
   326 F. Supp. 3d 1372 (J.P.M.L. 2018).......................................................................3

*In re Invokana (Canagliflozin) Prod. Liab. Litig.*,
   223 F. Supp. 3d 1345 (J.P.M.L. 2016).................................................................11, 14

*Johnson v. Micron Tech., Inc.*,
   354 F. Supp. 2d 736 (E.D. Mich. 2005)......................................................................7

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
   523 U.S. 26 (1998)....................................................................................................8, 10

*Nunez v. Ford Motor Co.*,
   Case No. 1:18-cv-25211 (S.D. Fla.) ........................................................................1, 4

*PLIVA, Inc. v. Mensing*,
   564 U.S. 604 (2011)...................................................................................................15

*In re Power Morcellator Prod. Liab. Litig.*,
   140 F. Supp. 3d 1351 (J.P.M.L. 2015)......................................................................11

*Royal Ins. Co. of Am. v. Tower Records, Inc.*,
   No. 02-CIV. 2612, 2002 WL 31385815 (S.D.N.Y. Oct. 22, 2002)..........................6

*In re Showa Denko K.K. L-Tryptophan Prod. Liab. Litig.-II*,
   953 F.2d 162 (4th Cir. 1992) ......................................................................................9

*Stevens v. Ford Motor Co.*,
   Case No. 2:18-cv-00456 (S.D. Tex.) .................................................................1, 4, 7, 8

*Sullivan v. Ford Motor Co.*,
   No. 16-CV-03505-JST, 2016 WL 6520174 (N.D. Cal. Nov. 3, 2016)......................8

*In re: Takata Airbag Prod. Liab. Litig.*,
   84 F. Supp. 3d 1371 (J.P.M.L. 2015)........................................................................14

*In re Upjohn Co. Antibiotic "Cleocin" Prod. Liab. Litig.*,
   450 F. Supp. 1168 (J.P.M.L. 1978)............................................................................6

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab.
   Litig.*,
   363 F. Supp. 3d 1378 (J.P.M.L. Feb. 14, 2019)........................................................5

*In re Walgreens Herbal Supplements Mktg. & Sales Practices Litig.*,
   109 F. Supp. 3d 1373 (J.P.M.L. 2015)...................................................................6

*In re: Watson Fentanyl Patch Prod. Liab. Litig.*,
   883 F. Supp. 2d 1350 (J.P.M.L. 2012)...................................................................14

*In re: ZF-TRW Airbag Control Units Products Liability Litigation*,
   MDL No. 2905 ...........................................................................................................14

**Statutes**

28 U.S.C. § 1407.................................................................................................... *passim*

**Rules**

J.P.M.L Rule 7.1 ..........................................................................................................8

J.P.M.L Rule 7.2(a).......................................................................................................8

**Other Authorities**

Robert Bosch GmbH, https://www.bosch-mobility-solutions.com/en/products-
   and-services/passenger-cars-and-light-commercial-vehicles/powertrain-
   systems/common-rail-system-piezo/high-pressure-pump-cp4/ (last visited Sep.
   4, 2019) ....................................................................................................................12

## INTRODUCTION

Creation of an MDL under Section 1407 is the centralization option of last resort. Transfer of related cases to a single forum under Section 1404 is more efficient and thus preferable to the creation of an MDL, which this Panel has said many times.

This situation is tailor-made for consolidation using Section 1404.  There are only four putative class actions pending against Ford alleging defects in the 6.7L PowerStroke Engine's fuel pump.  The same lawyers represent the parties in all four cases.  Three of those cases are single-state class actions: (1) Florida, (2) Texas, and (3) California.  The fourth is a nationwide class action pending in the Eastern District of Michigan, where Ford and Bosch (the manufacturer of the fuel pump) have their headquarters.[1]  Ford already has filed motions to transfer the Florida, Texas, and California actions to the Eastern District of Michigan. Consistent with its longstanding practice in similar cases, this Panel should deny Plaintiffs' Motion to allow the transfer process to run its course.

Should an MDL become necessary, the Eastern District of Michigan is the preferable forum.  Since both Ford and Bosch have their headquarters in Michigan, almost all of the relevant witnesses and documents will be located there.  Michigan also is centrally located and easily accessible for the Plaintiffs and their attorneys.  Moreover, Ford, Bosch, and Plaintiffs themselves support consolidation in the Eastern District of Michigan.  The Northern District of California, which Plaintiffs proposed as their first choice, does not have a comparative advantage on any relevant factor.

---

[1] The four cases pending against Ford alleging defects in the 6.7L PowerStroke Engine's fuel pump are: (1) *Stevens v. Ford Motor Co.*, Case No. 2:18-cv-00456 (S.D. Tex.), (2) *Farlow v. Ford Motor Co.*, Case No. 3:18-cv-06967 (N.D. Cal.), (3) *Nunez v. Ford Motor Co.*, Case No. 1:18-cv-25211 (S.D. Fla.), and (4) *Droesser v. Ford Motor Co.*, Case No. 19-cv-12365 (E.D. Mich.).  Ford refers to these cases collectively as "the Ford Cases."

Plaintiffs' Motion seeks to combine cases against Ford, GM, and Chrysler into the same MDL, which would do more harm than good.  Cases against each manufacturer involve different vehicles with different fuel systems and different fuel pumps that operate in different ways. Plaintiffs will thus have to prove their defect claims against each manufacturer using different documents and witnesses.  Likewise, each Plaintiff alleges that the manufacturer of his or her vehicle induced them to purchase that vehicle with misleading advertisements and sales tactics. Factual issues related to "corporate knowledge" are of course unique to each defendant, and Ford, GM, and Chrysler each have their own marketing and sales campaigns.  Thus, as with their defect claims, Plaintiffs will have to prove fraud using documents and testimony that differ markedly from manufacturer to manufacturer.

These manufacturer-specific idiosyncrasies will necessitate manufacturer-specific discovery, which would actually increase the discovery burden on the parties and the court and overwhelm any common issues or efficiencies (if any) afforded by consolidation.  Finally, industry-wide consolidation would risk unnecessary and unwanted disclosure of trade secrets, or at a minimum require the MDL court to erect cumbersome barriers to prevent such disclosure.

For all these reasons, the Panel should deny Plaintiffs' Section 1407 Motion without prejudice.  This would give the courts that are currently presiding over the Ford Cases an opportunity to consolidate them for all purposes using Section 1404 transfer to the Eastern District of Michigan.  If Ford's pending Section 1404 motions do not resolve this issue, the Panel should create an MDL in the Eastern District of Michigan for the Ford cases only.

## ARGUMENT

**I.     Plaintiffs' Motion should be denied because Ford's pending motions to transfer under Section 1404 are preferable to consolidation for pretrial purposes only.**

Plaintiffs' Motion is premature because the courts presiding over the Ford Cases have not

had a chance to decide whether to transfer them to the Eastern District of Michigan pursuant to

Section 1404.  As this Panel has "repeatedly" held, "transfer under Section 1404 is preferable to

Section 1407 centralization."  *See In re Gerber Probiotics Prods. Mktg. and Sales Practices*

*Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012); *In re: Best Buy Co., Inc., California Song-*

*Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011) (explaining that

centralization under Section 1407 should be "the last solution after considered review of all other

options").  This Panel consistently reaches this conclusion because transfer under Section 1404 is

more efficient.  *See, e.g.*, *In re: Best Buy Co.*, 804 F. Supp. 2d at 1378 (explaining that a

preference for Section 1407 centralization over Section 1404 transfer is "a short-sighted view of

centralization" because Section 1404 transfer "avoid[s] duplication of efforts").

In *In re Gerber*, for example, this Panel denied an unopposed motion to centralize ten

cases pursuant to Section 1407 even though they had "common factual and legal issues" because

there was a "reasonable prospect" of consolidation through motions to transfer under Section

1404.  *In re Gerber*, 899 F. Supp. 2d at 1379.   This Panel rightly found that effective use of

Section 1404 would result in a more "streamlined action" that produces "significant advantages"

by avoiding the need to remand transferred cases for potential motions practice and trial.  *Id.* at

1380.

*In re Gerber* is just one example in a decades' long string of cases preferring Section

1404 transfer over Section 1407 centralization.  *See In re Hudson's Bay Co. Customer Data Sec.*

*Breach Litig.*, 326 F. Supp. 3d 1372, 1373 (J.P.M.L. 2018) (noting that this Panel has

"repeatedly" expressed a preference for transfer pursuant to Section 1404 and collecting similar cases).  That remains the proper course here.

Indeed, the Ford Cases are particularly well suited for transfer under Section 1404. Plaintiffs' Motion identifies only three related putative class actions pending against Ford outside the Eastern District of Michigan: (1) *Stevens v. Ford Motor Co.*, Case No. 2:18-cv-00456 (S.D. Tex.), (2) *Farlow v. Ford Motor Co.*, Case No. 3:18-cv-06967 (N.D. Cal.), and (3) *Nunez v. Ford Motor Co.*, Case No. 1:18-cv-25211 (S.D. Fla.).  Ford has filed a motion to transfer pursuant to Section 1404(a) in each case, so that those cases can be consolidated with *Droesser v. Ford Motor Co.*, Case No. 19-cv-12365 (E.D. Mich.), and those motions are pending.  The same lawyers represent Ford in each case.

Thus, in keeping with this Panel's well-established practice in similar cases, this Panel should deny Plaintiffs' Motion and allow the transfer process to run its course.  *In re Capacitors Antitrust Litig. (No. II)*, 223 F. Supp. 3d 1340, 1342–43 (J.P.M.L. 2016) ("if transfer ultimately cannot be effectuated through Section 1404 . . . the parties may at that time again seek centralization under Section 1407"); *In re Corvette Z06 Mktg. & Sales Practices Litig.*, 289 F. Supp. 3d 1348, 1349 (J.P.M.L. 2018) (denying motion to consolidate under Section 1407 where the litigation at issue "involves only four actions pending in as many districts" and where "Plaintiffs are represented by common counsel, as are defendants").

II.     **If this Panel establishes an MDL it should select the Eastern District of Michigan as the forum and include only the Ford cases in that MDL.**

    A.     **The Eastern District of Michigan is more convenient for the parties and witnesses.**

The Eastern District of Michigan is the best forum for any MDL, if an MDL becomes necessary.  This Panel's guiding lights for selection of a transferee court are "the convenience of

4

parties and witnesses" and promotion of "the just and efficient conduct of such actions."  28 U.S.C. § 1407.  The Eastern District of Michigan best satisfies both objectives.

All parties agree that the Eastern District of Michigan is an appropriate forum for this litigation.  (Pls' Br. at 20.)  While the Eastern District of Michigan is not Plaintiffs' first choice, this Panel typically chooses the forum for which there is some agreement between opposing counsel, even when the relevant proposals are somewhat fractured.  *See, e.g.*, *In re Corvette Z06 Mktg. & Sales Practices Litig.*, 289 F. Supp. 3d 1348, 1349 (J.P.M.L. 2018) ("Moreover, all parties support centralization in the Northern District of Illinois (though plaintiffs' support of that district is an alternative to the Southern District of Florida).").

Agreement aside, the Eastern District of Michigan is, on balance, the best forum.  Ford's global headquarters is in Dearborn, Michigan.  As a result, most relevant documents and witnesses are located there.  This counsels in favor of choosing a Michigan forum.  *See, e.g.*, *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Practices Litig.*, No. MDL 2901, 2019 WL 4010760, at *1 (J.P.M.L. Aug. 1, 2019) (finding that the Eastern District of Michigan is appropriate forum based on location of Ford's headquarters); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 363 F. Supp. 3d 1378, 1382 (J.P.M.L. Feb. 14, 2019) (similar).

Non-party Bosch, the designer and manufacturer of the relevant CP4 pumps, has its headquarters in Michigan as well.  Since Bosch has not been named as a defendant in any of the cases in which Plaintiffs seek centralization, this Panel should give greater weight to the convenience of Bosch witnesses.  *Garlough v. Trader Joe's Co.*, No. 15-CV-01278-TEH, 2015 WL 4638340, at *4 (N.D. Cal. Aug. 4, 2015) ("The convenience of non-party witnesses is of greater importance than that of party witnesses."); *comScore, Inc. v. Integral Ad Sci., Inc.*, 924 F.

Supp. 2d 677, 688 (E.D. Va. 2013) (similar); *Royal Ins. Co. of Am. v. Tower Records, Inc.*, No. 02-CIV. 2612 (PKL), 2002 WL 31385815, at *5 (S.D.N.Y. Oct. 22, 2002) (similar). Again, the Eastern District of Michigan is the preferred forum.

Plaintiffs' stated reasons for choosing the Northern District of California do not match the benefits of the Eastern District of Michigan. Plaintiffs' argument that the Northern District of California is more convenient for the parties ignores the nationwide character of this litigation. Witnesses for Ford are primarily located in Michigan. Moreover, this litigation includes named Plaintiffs and putative class members from across the country, including Michigan. (*See, e.g.*, Doc. 1-15, *Droesser* Compl., ¶¶ 9-18.) As a result, "centralization" would be more favorable in a non-coastal location like Michigan.

Nor is California more convenient for counsel. While lawyers from both sides have offices in California, most of the lawyers that have actually appeared in this litigation do not live in San Francisco, and the majority live on the other side of the country (Doc. 1-4, Proof of Service (listing Ford counsel in Virginia, South Carolina, Texas, Florida, and Los Angeles, California and signed by Plaintiffs' counsel in Texas and Washington)), making centralization in the middle of the country in a place like Detroit most convenient. *See In re Walgreens Herbal Supplements Mktg. & Sales Practices Litig.*, 109 F. Supp. 3d 1373, 1376 (J.P.M.L. 2015) (selecting the Northern District of Illinois because it "provides a convenient and accessible forum for actions filed throughout the country"); *In re Upjohn Co. Antibiotic "Cleocin" Prod. Liab. Litig.*, 450 F. Supp. 1168, 1171 (J.P.M.L. 1978) (noting that "the Eastern District of Michigan is in a geographically central and convenient location"). And because the Eastern District of Michigan is home to Detroit and its major international airport, there is little downside

to selecting this non-coastal location.  *See* About Us, Detroit Metro Airport,

https://www.metroairport.com/about-us (last visited Sept. 13, 2019).[2]

The alleged presence of numerous unnamed class members in California likewise does

not advance Plaintiffs' argument.  Unnamed class members exist all across the United States, so

there is no need to choose a forum based on their location.  *See, e.g.*, *Johnson v. Micron Tech.,*

*Inc.*, 354 F. Supp. 2d 736, 745 (E.D. Mich. 2005) (holding that jurisdiction must be established

"based only on the claims of named class members now before the Court").  In fact, Plaintiffs'

suggestion that this Panel should select a forum based on where unnamed class members live is

inconsistent with their prior positions in this litigation.  Plaintiffs' counsel objected strenuously

when Ford sought discovery from a small number of former named Plaintiffs in the Texas action.

(*See Stevens* Doc. 43 (Pls.' Opp. To Ford Mot. for Deps of Former Class Reps).)  So based on

Plaintiffs' own litigation position, the presence of absent putative class members should have no

weight.

Finally, the administrative difficulties flowing from court congestion supports transfer.

During the year ending June 30, 2019, the Northern District of California had 750 pending cases

per judgeship, while the Eastern District of Michigan had only 353.  (*See* Ex. 1, Judicial

Caseload Profile at 40, 66.)  This favors selecting the Eastern District of Michigan as the forum.

*Cf. In re: Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practices Litig.*, 844 F.

Supp. 2d 1380, 1381 (J.P.M.L. 2012) (choosing district based on the fact that it is "presiding

over fewer MDL dockets than other proposed districts").

---

[2] Nor is there a more "procedurally advanced" action pending against Ford in the Northern District of California that would make that court a better forum.  The only such action that Plaintiffs identify is *In re: General Motors LLC CP4 Fuel Pump Litigation,* but Ford is not named as a defendant in that case.  (*See* Doc. 1-9, *In re: General Motors* Compl.).

**B.      Selecting the Eastern District of Michigan as the forum would avoid personal jurisdiction issues that would plague most other forum courts.**

**1.      Ford is headquartered and subject to general jurisdiction in the Eastern District of Michigan.**

Establishing an MDL in the Eastern District of Michigan would avoid all personal jurisdiction issues because Ford is subject to general personal jurisdiction in Michigan.  Since 1998, this Panel and many federal courts have recognized a transferee court lacks jurisdiction to try a case pending in an MDL absent proper personal jurisdiction.  *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

Ford's principal place of business is in Dearborn, Michigan.  (Doc. 1-6, *Stevens* Compl, at 12.)  Thus, under *Daimler AG v. Bauman*, Michigan can exercise general jurisdiction over Ford.  *Daimler*, 571 U.S. 117, 139 (2014).  Ford is not, however, similarly subject to general jurisdiction in most other forums, including Plaintiffs' chosen Northern District of California. *See, e.g.*, *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 965 (N.D. Cal. 2015) (finding no general jurisdiction as to Ford in California); *Sullivan v. Ford Motor Co.*, No. 16-CV-03505-JST, 2016 WL 6520174, at *2 (N.D. Cal. Nov. 3, 2016) (same).   Locating the MDL in the Eastern District of Michigan would allow any cases transferred to, or filed directly in, the transferee court to proceed to trial within the confines of the MDL regardless of whether the Plaintiffs are Michigan residents or whether the Plaintiffs file a consolidated amended complaint.

In this regard, as this Panel is aware, following the creation of an MDL, additional cases, known as "tag-along" claims, often follow.  The proper procedure is to file the case in a court with competent jurisdiction and have it "tagged" and transferred pursuant to J.P.M.L Rule 7.1. Many litigants skip this procedure and without a proper jurisdictional basis file the action directly in the MDL court, presumably (and mistakenly) under J.P.M.L Rule 7.2(a).  "While § 1407 provides a procedure for transferring cases filed in different districts to a single district

court for pretrial proceedings, nowhere does it expand the jurisdiction of either the transferor or the transferee court." *In re Showa Denko K.K. L-Tryptophan Prod. Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992); *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 873 (8th Cir. 2014).

Because these "tagalong" cases are not transferred under Section 1407 from a court with jurisdiction, the only possible font for the transferee court's authority is gone.  While a Defendant can, and often does for simplicity sake, consent to jurisdiction in these mis-filed cases for pretrial purposes, Plaintiffs have continued to contend in many cases, despite clear case law to the contrary, that remand for trial in these tagalong cases is not required, thus necessitating extensive motions practice relating to venue and jurisdiction, taxing party and judicial resources.

An MDL in the Eastern District of Michigan obviates this scenario and allows for the direct filing of "tag-along" cases against Ford.  If, however, this Panel selects another jurisdiction (like the Northern District of California) jurisdiction over many such claims will be wanting, and those claims will be have to be refiled in a different court – creating delay for the parties, the transferee court and this Panel.  The best way to avoid these inefficiencies is to select a transferee court that would have personal jurisdiction over both the transferred claims *and* all future related follow on claims.  Michigan is the only state with a pending action that fits the bill.

> **2.      An MDL Court's jurisdiction over even pretrial activities is no longer beyond scrutiny**

As noted above, this Panel and many federal courts since 1998 have recognized a transferee court lacks jurisdiction to try a case pending in an MDL absent proper personal jurisdiction.   Many courts and even this Panel, however, have traditionally presumed that a transferee court's rulings in pre-trial activities, including rulings on summary judgment, discovery and motions to dismiss, are not subject to similar personal jurisdiction scrutiny.  *See, e.g.*, *In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976).

The idea that cases transferred pursuant to Section 1407 are immune from personal jurisdiction concerns derives, alternatively, from one of two basic assumptions: (1) that a transferor court's personal jurisdiction over a defendant is somehow "derivative" of the transferee court's jurisdiction or (2) that Section 1407 supplies nationwide personal jurisdiction. Neither holds up to recent Supreme Court case law.

The proposition that a transferee's jurisdiction over parties is derivative of the transferor court's constitutes an expansive view of personal jurisdiction that is not compatible with modern Supreme Court precedent.  *See, e.g., Daimler*, 571 U.S. at 139 (pointing out that cases decided in an era where "doing business" in a forum was sufficient to establish jurisdiction "should not attract heavy reliance today"); *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1776 (2017) (citing "the practical problems resulting from litigating in the forum" and the problem of submitting to the power of a statute with "little legitimate interest in the claims" as justifications for limits on specific jurisdiction).  All of this suggests that the Panel may not brush aside personal jurisdiction concerns when selecting a forum.  Consolidation in the Eastern District of Michigan moots this issue.

Likewise, Section 1407 does not create an independent basis for personal jurisdiction. The United States Supreme Court recognized as much in *Lexecon* when it held that a district court conducting pretrial proceedings under Section 1407 had no authority to transfer the case to itself for trial.  *See, e.g.*, *Lexecon Inc.*, 523 U.S. at 28 ("We hold it has no such authority.")  This conclusion is bolstered by the fact Section 1407 lacks a nationwide service of process provision. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)

Neither Plaintiffs nor Ford disputes that Ford is "at home" in Michigan, meaning the Eastern District of Michigan would have general personal jurisdiction over Ford in all of the

10

claims at issue.  Plaintiffs and Ford also agree that the Eastern District of Michigan is an appropriate forum for this litigation.  (Pls' Br. at 20.)  Thus, this Panel can establish an MDL in an agreed-upon court *and* avoid the knotty jurisdictional problems described above by selecting the Eastern District of Michigan as the venue for any MDL.

## III.    Any Ford MDL should not include General Motors or Chrysler.

If this Panel elects to establish an MDL for Ford cases, that MDL should not include cases pending against General Motors or Chrysler.  This Panel is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products."  *In re Invokana (Canagliflozin) Prod. Liab. Litig.*, 223 F. Supp. 3d 1345, 1348 (J.P.M.L. 2016); *see also In re Power Morcellator Prod. Liab. Litig.*, 140 F. Supp. 3d 1351, 1353–54 (J.P.M.L. 2015) (similar).

Plaintiffs have not established the propriety of consolidating the cases against different defendants for pretrial purposes.  Plaintiffs seem to contend that they can establish "the prevalence of common questions of law and fact" merely by alleging that all Bosch variants of CP4 pumps are "incompatible with American diesel fuel."  Such a contention, however, is without technical or legal merit.

Most obviously, it assumes that the discovery and development of the factual and expert evidence in these cases will be limited to proving or disproving that narrow (and baseless) assertion.  Experience in these highly technical product cases shows that the reality is entirely different.

Plaintiffs' claims include those for fraud, which will require discovery and motion practice on a host of issues that are unique to each manufacturer, including each company's history with diesel engines, company knowledge regarding the performance and durability of the fuel systems at issue, company communications with customers including advertisements,

unique warranty provisions and interpretation, the field performance and warranty history of the different vehicles, maintenance requirements for the different designs, maintenance history of the class vehicles, and customer reliance on alleged misrepresentations.  None of this evidence or discovery will overlap from manufacturer to manufacturer.

Likewise the technical and design issues will require non-overlapping manufacturer-specific discovery with no benefit to the parties or court afforded by industry wide consolidation. Ford, GM, and Chrysler employ different engineers who design different vehicles with different engines and fuel systems.  In fact, the CP4 pump itself comes in various shapes and sizes to account for a particular customer's unique specifications.  (*See, e.g.*, *High-pressure pump CP4/CP4N*, ROBERT BOSCH GMBH, https://www.bosch-mobility-solutions.com/en/products-and-services/passenger-cars-and-light-commercial-vehicles/powertrain-systems/common-rail-system-piezo/high-pressure-pump-cp4/ (last visited Sep. 13, 2019) (explaining that "[t]he variants tailor-made for each segment differentiate themselves with regard to, for example, lifetime, robustness, and maximum flow rate.").)

Ford, Chrysler, and GM use very different fuel systems in the vehicles at issue.  Ford's 6.7L diesel vehicles have a "pressurized" fuel system, GM's Duramax diesel vehicles use a depression system, and Chrysler's Cummins diesels use a Hybrid fuel system.  The operation of these different systems affects the operation and durability of the CP4 pump because they influence the temperature, pressure and flow rate of fuel flowing into it.  (Ex. 2, Fulton Decl at 2-3.)  Plaintiffs' own allegations against Ford, GM, and Chrysler support this point.  Ford designed its 6.7L Power Stroke engine in-house, to its own specifications.  In contrast, GM originally developed its 6.6L "Duramax" diesel engine in partnership with Isuzu.  (Doc 1-16, *Dawsom*

Compl, ¶ 53).  Chrysler, on the other hand, incorporated the allegedly defective CP4 into its 3.0L "EcoDiesel" engines.  (Doc. 1-7, *Berry* Compl., ¶1.)

Indeed, the very first two sentences in Plaintiffs' Motion (which, ironically, are meant to show the commonality of factual issues in Plaintiffs' claims against GM, Ford and Chrysler) reveal exactly how the factual evidence will diverge between these different defendants: "The Bosch-supplied CP4 fuel pump . . . struggles to lift a volume of fuel sufficient to lubricate itself. As a result, the pump is forced to run dry and destroy itself as air bubbles allow metal to rub against metal."  (Pls' Br. at 3)  These statements cannot even theoretically apply to Ford vehicles because the Ford diesel fuel system does not lift or otherwise pull fuel into its high pressure pump in any way.  This, rather, is a feature of the GM diesel fuel system, which is markedly different from Ford's.  (*See* Fulton Decl, at 3-4.)  Importantly, a "run dry" condition is not a recognized failure mode for a CP4 pump in a Ford vehicle, as it might be in a "depression" as used by GM, because Ford has a dedicated electrical low-pressure pump that pushes fuel into the CP4 pump regardless of engine operating conditions.  (*Id.* at 5.)  In short, Plaintiffs' statements, purportedly applicable to all three of the automotive manufacturer defendants, involve technical attributes foreign to the design of the allegedly defective Ford vehicles.

And, while these architectural component-content design differences are readily apparent, they are born out of a collection of engineering specifications, system and subsystem design requirements, and testing regimens and protocols that comprise heavily guarded institutional know-how in each of these competing car companies.  Consolidation would risk unwanted disclosure of these trade secrets. At best, the MDL court would have to take great pains to protect such disclosure, at worst a defendant's invaluable intellectual property would be

comprised.  As a result, the risks of combining cases against these three competitors in the same MDL outweigh any potential benefits.[3]

This Panel typically declines to join cases against business competitors into a single MDL because "[c]entralizing competing defendants in the same MDL may unnecessarily complicate case management, due to the need to protect trade secret and confidential information."  *In re Invokana*, 223 F. Supp. 3d at 1348.  Ford, General Motors, and Chrysler are competitors and each has certain trade secrets that it cannot share with the others.  If all three manufacturers are joined together in the same MDL, the transferee court would need to erect strict confidentiality barriers to keep each defendant's trade secrets a secret, a cumbersome task that could be avoided through the creation of manufacturer-specific MDLs.  *In re: Watson Fentanyl Patch Prod. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) ("Moreover, centralization could complicate these matters, as defendants may need to erect complicated confidentiality barriers, since they are business competitors.").

The authorities cited by Plaintiffs are not to the contrary.  In *In re: Takata Airbag Prod. Liab. Litig.*, 84 F. Supp. 3d 1371 (J.P.M.L. 2015), for example, all parties supported centralization, which is not the case here.  *Id.* at 1372.  *In re: ZF-TRW Airbag Control Units Products Liability Litigation*, MDL No. 2905, is different as well, because the manufacturer of the allegedly defective airbag control unit in that case was actually joined as a defendant and supported centralization.  (*See* MDL No. 2905, Doc. 112 at 1-2 ("ZF-TRW Defendants, *which are named in all actions*, support centralization in the Eastern District of Michigan[.]") (emphasis added).

---

[3] Notably, Plaintiffs chose to separate Ford, GM, and Chrysler when filing suit into separate cases.  It was only after a ruling in their favor in the Northern District of California against GM that Plaintiffs' counsel opted for a different tactic.

The remaining cases cited by Plaintiffs are distinguishable because the products at issue in those cases varied little industry-wide.  For example, the plaintiffs in *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.,* 201 F. Supp. 3d 1375, 1376 (J.P.M.L. 2016) alleged that their "100% grated parmesan cheese" was mislabeled because it contained significant amounts of cellulose, and this Panel found that much of the evidence would be the same across manufacturers because it involved "nearly identical labeling."  *Id.* at 1376-78. Similarly, *In re: Checking Account Overdraft Litig.,* 626 F. Supp. 2d 1333 (J.P.M.L. 2009) involved allegations that various banks charge excessive overdraft fees, in what the panel found were truly *"industry-wide* bank posting policies and procedures," *Id* at 1335, whereas here there is no industry-wide design but rather different designs in different vehicles.  Finally, *In re: Darvocet, Darvon & Propoxyphene Prod Liab. Litig.,* 780 F. Supp. 2d 1379 (J.P.M.L. 2011), addressed a single active drug ingredient in brand-name and generic drugs, and generic drugs are required to be identical to their brand-name equivalent (*PLIVA, Inc. v. Mensing,* 564 U.S. 604, 612 (2011)).  *In re: Darvocet,* 780 F. Supp. 2d at 1381.

For these reasons, Plaintiffs' request to consolidate GM, Ford and Chrysler cases into a single MDL is without merit – the quantum of evidence regarding product design and testing, company knowledge regarding the performance of their vehicles, communications with customers, customer warranty information, customer reliance on representations, and a whole host of other issues will be entirely manufacturer-specific, and the court's management over the discovery of such information would not benefit from any efficiencies associated with putting these cases all into a single action.

## CONCLUSION

For these reasons, Ford respectfully requests that this Panel deny Plaintiffs' Motion without prejudice.  In the alternative, Ford respectfully requests that this Panel establish an MDL in the Eastern District of Michigan consisting only of the Ford Cases.

Respectfully submitted,

MCGUIREWOODS LLP

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach
Perry W. Miles, IV
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
(804) 775-4746 / (804) 698-2304 (Fax)

Courtney C. Shytle
MCGUIREWOODS LLP
1301 Gervais St., Ste 1050
Columbia, SC 29201

Charles B. Hampton
MCGUIREWOODS LLP
600 Travis St., Suite 7500
Houston, Texas 77002

Bethany Gayle Lukitsch
MCGUIREWOODS LLP
355 South Grand Avenue, Suite 4200
Los Angeles, CA 90071

ATTORNEYS FOR
FORD MOTOR COMPANY